STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS

**FILED**
**April 20, 2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **W.H., J.H., I.H., and C.H.-1**

**No. 20-0872** (Webster County 19-JA-28, 19-JA-29, 19-JA-30, and 19-JA-31)

**MEMORANDUM DECISION**

Petitioner Mother C.H.-2, by counsel Bernard R. Mauser, appeals the Circuit Court of Webster County's October 5, 2020, order terminating her "parental and all other rights [she] may have to" W.H., J.H., I.H. and C.H.-1.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel James Wegman, filed a response in support of the circuit court's order. The guardian ad litem, Mary Elizabeth Snead, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her rights upon erroneously finding that she could not conform her conduct to satisfy the requirements of an improvement period, without first granting her an improvement period, and when less-restrictive dispositional alternatives were available.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The proceedings below began in July of 2019, when the DHHR filed its initial abuse and neglect petition. The DHHR later filed an amended petition in August of 2019. Neither of these documents were included in petitioner's appendix record, although they are reflected on the

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because one of the children and petitioner share the same initials, they will be referred to as C.H.-1 and C.H.-2, respectively, throughout this memorandum decision.

docket sheet petitioner did include. On September 19, 2019, the DHHR filed its second amended petition alleging that petitioner abused and neglected the children[2] by engaging in domestic violence with her husband, the father of C.H.-1. According to the DHHR, it began providing petitioner parenting services after this incident in June of 2019. The DHHR further alleged that in July of 2019, W.H., who is blind, was permitted to swim in a river without proper supervision, which resulted in the child nearly drowning. When the DHHR spoke with petitioner about this incident, she denied that the child was improperly supervised and indicated that he instead slipped on a rock. The DHHR also alleged that in July of 2019, law enforcement responded to the home to serve warrants on another adult who lived there, at which point law enforcement officers discovered drugs and drug paraphernalia in the home. When law enforcement returned to the home with a Child Protective Services ("CPS") worker, petitioner's husband ran from the premises. The investigation uncovered digital scales in the husband's vehicle and additional drugs and paraphernalia in the home. According to the DHHR, nine adults lived in the two-bedroom residence with the four children at issue. Finally, the DHHR alleged that petitioner had been involved in a prior abuse and neglect proceeding wherein it was ordered that she prohibit her husband from having contact with W.H. because of the husband's drug abuse. As such, the DHHR alleged that petitioner abused and/or neglected the children.

According to the record, petitioner admitted to the allegations against her and was adjudicated as an abusive and neglectful parent. Thereafter, petitioner filed a motion for an improvement period. In August and September of 2020, the circuit court held dispositional hearings, during which the circuit court heard testimony from multiple individuals, including several named respondents, law enforcement personnel, and DHHR workers. Specifically, a Pocahontas County Sheriff's Deputy testified that he responded to petitioner's residence in July of 2020 after receiving a report that petitioner and her husband were engaged in a physical altercation. After forcing entry into petitioner's residence, the deputy found petitioner and her husband lying on a bed and noticed that petitioner "had some light bruising and scrap[e]s on . . . her face." Upon questioning, petitioner admitted that she "hit [her husband] in the mouth." Petitioner's husband then informed the deputy that petitioner "stabbed him in the hand" and the deputy observed the laceration. Petitioner was arrested as a result of this altercation on a charge of domestic battery. Next, a West Virginia State Trooper testified that he responded to petitioner's home multiple times since January of 2020, including once in response to a possible domestic violence situation between petitioner and her husband in May of 2020. The trooper confirmed that petitioner's husband was present at the home each time he responded to that location.

One of petitioner's service providers testified that she began working with petitioner to help with domestic violence prior to the initiation of the proceedings below. According to the provider, although petitioner "can talk about how domestic violence is a problem," she nonetheless did not apply herself in services "because she doesn't really feel like she [did] anything to have a case" and "never felt like she was really part" of the problem. According to

---

[2]Petitioner is the mother of C.H.-1 and the grandmother of the remaining children. According to the record, petitioner exercised custody of all four children at the time the DHHR initiated the proceedings.

the provider, petitioner did not understand the importance of addressing the issues of abuse and neglect and that "her judgment and decision making is problematic," given that the provider was "still addressing . . . domestic violence . . . and the case has been open for a year." The provider also discussed the condition of petitioner's home, which lacked running water. According to the provider, petitioner delayed correcting the issues with the home, instead simply "saying that she was just getting it ready" throughout the entirety of the proceedings. The provider concluded that there were no further services that could change petitioner's circumstances.

A CPS worker testified and confirmed the unsuitable nature of petitioner's home, indicating that she visited the home shortly before the August of 2020 dispositional hearing and it lacked running water. According to the CPS worker, the home had "actually gotten worse" during the proceedings. The CPS worker testified that the home did not have a functioning front door and was cluttered with belongings. According to the CPS worker, petitioner informed her that "someone had broke in and moved stuff around." The CPS worker also testified about petitioner's ongoing contact with her husband, who she had been directed to cease contacting throughout the case because of the ongoing domestic violence between them and the fact that the husband's parental rights were terminated earlier in the proceedings. The CPS worker stated that petitioner "still doesn't believe that there was really any domestic violence" and that petitioner "believes she has done nothing wrong that caused the . . . adjudication." Finally, petitioner testified and indicated that she had not had contact with her husband since his incarceration, although she later contradicted herself by indicating that she had spoken with him at least once since his incarceration. Despite reiterating at the September of 2020 dispositional hearing that she had not spoken to her husband, the DHHR introduced a recording that established petitioner had spoken with her husband the prior day. Petitioner denied that it was her voice on the recording and testified repeatedly that she could not recall having spoken with her husband the day prior.

Based on this evidence, the circuit court found that petitioner failed to establish by clear and convincing evidence that she would comply with an improvement period based on her failure to accept responsibility for her actions and the fact that she demonstrated no change in her circumstances over fourteen months. According to the court, petitioner failed to provide a fit and suitable home and "is not going to cease contact with" her husband. Further, the court found that petitioner's testimony regarding her contact with her husband was evasive and lacked credibility. Accordingly, the court found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect and that termination of her rights was necessary for the children's welfare. As such, the court terminated petitioner's "parental and all other rights [she] may have" to all of the children.[3] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

---

[3]All parents' parental rights to all of the children were terminated below. The permanency plan for W.H., J.H., and I.H. is adoption together in the current foster home. Seventeen-year-old C.H. is placed with a separate foster family with a permanency plan of legal guardianship in that home.

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that it was error to terminate her parental rights upon a finding that she could not conform her conduct to satisfy the requirements of an improvement period and when less-restrictive alternatives were available. Without belaboring petitioner's specific arguments, we find that the resolution of this matter turns entirely upon petitioner's failure to acknowledge the conditions of abuse and neglect at issue.

As this Court has routinely held,

[i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). The evidence below was uncontroverted that petitioner failed to acknowledge or accept responsibility for the children's abuse and/or neglect. On appeal, petitioner distorts the record and attempts to minimize her conduct in order to argue that termination of her parental rights was in error. These arguments, however, are without merit.

According to petitioner, the circuit court did not provide her with an opportunity to prove that she could modify her conduct or continue working on her residence to ensure that it was fit and proper. The record, however, entirely contradicts this argument. Although it is true that petitioner was never granted a formal improvement period, she ignores the fact that the DHHR began providing services to address her issues prior to the initiation of the proceedings and continued to do so throughout the entire case. Contrary to her argument, petitioner had over one year to comply with services in an effort to remedy the conditions at issue, to no avail. Indeed, witnesses at the dispositional hearings testified that petitioner not only failed to improve but, in

fact, denied that she engaged in domestic violence or was in any way responsible for her adjudication as an abusive and neglectful parent. This was in spite of the fact that petitioner was arrested for stabbing her husband roughly one month prior to the August of 2020 adjudicatory hearing. Despite extensive services and an extended period to demonstrate improvement, petitioner's conduct with regard to domestic violence deteriorated. Similarly, DHHR personnel testified that petitioner's residence was in worse condition at the time of the dispositional hearings than it was earlier in the proceedings. As such, it is clear that petitioner's argument that she was given no opportunity to demonstrate improvement is without merit.

On appeal to this Court, petitioner continues to ignore the abuse and/or neglect for which she was adjudicated and minimizes her conduct by asserting that "[t]his was not a case where [she] was physically abusive to her child/grandchildren, where she was addicted to drugs, or where she did not have a good relationship with these children." This argument only reinforces the circuit court's findings that petitioner failed to accept responsibility for her conduct and its impact on the children below. While petitioner's assertions may be true, the fact that she attempts to characterize her abusive and/or neglectful conduct as somehow less harmful to the children because it did not involve physical abuse or drug addiction only highlights her continued refusal to accept responsibility for her conduct. While petitioner argues that she established that she was likely to fully participate in an improvement period, as required by West Virginia Code § 49-4-610, she nevertheless ignores the fact that her failure to acknowledge the abuse and neglect at issue resulted in an improvement period being an exercise in futility. As we have explained, a circuit court has discretion to deny an improvement period when no improvement is likely. *See In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002). Indeed, petitioner clearly evidenced her refusal to comply with basic requirements below, including that she have no contact with her husband. Not only did petitioner fail to comply with this requirement, she actively engaged in additional domestic violence with him on at least one occasion during the proceedings. Therefore, it is clear that the circuit court did not err in denying petitioner an improvement period.

This same evidence also supports the circuit court's termination of petitioner's parental rights. Again, petitioner's refusal to acknowledge the conditions of abuse and neglect resulted in those conditions being untreatable, which fully supports the circuit court's finding that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future. West Virginia Code § 49-4-604(d) defines "[n]o reasonable likelihood that conditions of neglect or abuse can be substantially corrected" as meaning "that, based upon the evidence before the court, the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." Given petitioner's inability to correct the conditions of abuse and neglect due to her refusal to acknowledge them, it is clear the circuit court did not err in making this finding. Additionally, the court found that the children's welfare required termination of petitioner's rights, given her failure to acknowledge, or otherwise accept responsibility for, her conduct. Under West Virginia Code § 49-4-604(c)(6), a circuit court may terminate parental rights upon these findings. Further, contrary to petitioner's argument that less-restrictive alternatives should have been employed, this Court has held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia

Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Accordingly, we find no error in the circuit court's termination of petitioner's parental and other rights to the children.

For the foregoing reasons, we find no error in the decision of the circuit court, and its October 5, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: April 20, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton

6